## NORTHAMPTON COUNTY.

JANUARY TERM, 1884, No. 29.                    MARCH 4, 1884.

## Osterstock *et al. v.* Sigman *et al.*

A deed of separation between G. S. and his wife, contained, *inter alia,* the following covenants by him:

"Nor shall or will, at any time hereafter, during the said coverture, or at her death, challenge, claim, or demand any right, title, or interest in any lands, tenements, or hereditaments of which she now is or shall or may hereafter be seized or possessed, nor any effects or personal estate, which by the present articles are made over or secured to the said Sarah for her use, or which, at any time hereafter, she shall get, acquire, or be possessed of, or which shall be given, devised, or bequeathed to her during her life by any of her relations or friends, or which she may obtain by her own industry; but that she shall and may peaceably and quietly have, hold, possess, use, and enjoy the same to and for her sole and separate use and benefit, notwithstanding her present coverture, and as if she were a *femme sole,* and may sell, assign, and transfer, and grant the same during her life at her absolute will and pleasure, and shall and may, at her own discretion, and as she shall think fit by her last will and testament, give, devise, and bequeath, grant, and dispose of the same or any part or parcel thereof to such person or persons as she shall think fit. And the said G. S., for himself, his heirs, executors, and administrators, doth, in consideration of the premises aforesaid, and in consideration also that the said Sarah shall, at all times hereafter, have a suitable provision and maintenance covenant with the said J. A., that the said Sarah shall, from henceforth, have, hold, occupy, possess, and enjoy the one equal undivided half part, the whole into two equal parts to be divided in quantity and quality as nearly as may be of the plantation and tract of land on which the said G. S. now lives, and in further confirmation thereof the said G. S. doth, by these presents, grant the said half part to the aforesaid J. A., his heirs and assigns forever. In trust, nevertheless, to and for the sole and separate use of the said Sarah."

*Held,* that the above deed gave to the wife of the said G. S. a life estate, and not a fee in the part of the plantation conveyed in trust for her, and that upon her death it reverted to the grantor and his heirs.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.;

Error to the Court of Common Pleas of *Northampton County.*

Ejectment by William Sigman and Jacob Herster, and

Susannah, his wife, against Reuben Osterstock, and Sarah Osterstock, to recover the one half part of a farm of one hundred and seventy-five acres, in Forks township, formerly the property of George Sickman.

The case was tried by agreement filed, without a jury, before SCHUYLER, J., whose findings of fact and law are as follows:

"The land in controversy was formerly part of a farm of about one hundred and seventy-five acres, owned by George Sickman, husband of Sarah Sickman, by whom he had three children, viz: William Sigman, Susanna, wife of Jacob Herster, and Mary, widow of James Nelson, the said William Sigman and Susanna Herster being the plaintiffs in this suit. On the 16th day of October, A. D. 1821, the said George and Sarah Sickman, and one Jacob Ackerman, as trustee for said Sarah, entered into written articles of separation, which are made a part of this finding. [The material portions of these articles are as follows:]

"WHEREAS, Divers unhappy differences and discontents have unfortunately arisen, and for some time past subsisted between the said George Sickman and his said wife, which have proceeded to such extremity that it is found impossible for the said parties to live and cohabit together with any expectation of comfort and happiness hereafter;

*And whereas,* There is no reasonable hope that the differences and discontents aforesaid can be so far reconciled that the said parties can hereafter live and cohabit together in that spirit of amity and concord which is essential to their mutual happiness and well doing, and the said George Sickman and Sarah, his wife, have therefore agreed from henceforth for and during their respective natural lives to live separate and apart from each other on terms hereinafter mentioned, the assent of the said Sarah to all which terms is manifested by her becoming a party to these presents:

Now this indenture witnesseth that the said George Sickman for himself, his heirs, executors, and administrators, in pursuance of said agreement doth hereby covenant, promise, and agree to, and with the said Jacob Ackerman, his executors, administrators, and assigns, in manner following, that is to say, that he, the said George Sickman, shall and will, from henceforth, during his natural life, live separate and apart from his said wife the said Sarah, and shall not and will not, at any time hereafter, cohabit, abide, or dwell with her as his wife, nor use or

[Osterstock *et al. v.* Sigman *et al.*]

frequent her company otherwise than he may or might lawfully do with a stranger, and shall not and will not visit her, nor intrude upon her, nor demand admittance to her without her free permission and consent first had and obtained. And further, that it shall and may be lawful for the said Sarah from henceforth, for and during her natural life, to live separate and apart from her said husband. And that he, the said George Sickman, shall and will from henceforth permit and suffer her, the said Sarah, from time to time, and at all times hereafter during her present coverture, to go, reside, and dwell separate and apart from him as aforesaid, in such place and places, house and houses, family and families, either by herself or with such relations or friends as she, the said Sarah, shall, from time to time, at her will and pleasure, and notwithstanding the present coverture, and as if she were a *femme sole* think fit, without any let, hindrance, disturbance, molestation, or interruption of him, the said George Sickman, or of any other person or persons by his procurement or permission, by day or by night, and that he will not, at any time hereafter, sue forth any writ of *habeas corpus* or any other process for her person, nor compel or require her to cohabit with him, nor sue, molest, disturb, or trouble her for living separate and apart from him as aforesaid, nor any other person or persons whomsoever with whom she may reside, or who may reside with her, nor shall or will, at any time hereafter during the said coverture, or at her death, challenge, claim, or demand any right, title, or interest in any lands, tenements, or hereditaments of which she now is or shall or may hereafter be seized or possessed, nor any moneys, bonds, obligations, notes, goods, chattels, wearing apparel, furniture, household stuff, beds, bedding, or other effects or personal estate of what nature or kind soever, which, by these present articles, are made over or secured to the said Sarah for her use, or which at any time hereafter she shall get, acquire, or be possessed of, or which shall be given, devised, or bequeathed to her during her life by any of her relations or friends, or which she may obtain by her own industry ; but that she shall and may peaceably and quietly have, hold, possess, use, and enjoy the same to and for her sole and separate use and benefit, notwithstanding her present coverture, and as if she were a *femme sole*, and may sell, assign, and transfer, and grant the same during her life at her absolute will and pleasure, and shall, may, at her own discretion, and as she shall think fit by her last will and testament in

[Osterstock *et al.* *v.* Sigman *et al.*]

writing, or by any writing duly executed in the presence of two witnesses in the nature of a last will and testament give, devise, bequeath, grant, and dispose of the same or of any part or parcel thereof to such person or persons as she shall think fit, notwithstanding her coverture or whether she be covert or sole without any let, suit, hindrance, trouble, interruption, or disturbance whatsoever of or by him, the said George Sickman, his executors or administrators, or of or by any other person or persons whomsoever lawfully claiming or to claim by, from, or under him, and freed and discharged of and from all debts and engagements by him, the said George Sickman, heretofore contracted, or which he may or shall at any time hereafter contract, (except as hereafter excepted ) And the said George Sickman for himself, his heirs, executors, and administrators doth, in consideration of the premises aforesaid, and in consideration also that the said Sarah shall, at all times hereafter, have a suitable provision and maintenance, covenant, grant, and agree to, and with the said Jacob Ackerman, his executors, administrators, and assigns, by these presents that the said Sarah shall, from henceforth, have, hold, occupy, possess, and enjoy the one equal, undivided half part, the whole into two equal parts to be divided in quantity and quality as nearly as may be of the plantation and tract of land on which the said George Sickman now lives, the whole containing about one hundred and seventy-five acres, be the same more or less, freed and discharged from all dower or thirds of Barbara Sickman, the widow of Dietrich Sickman, deceased, or of any other person or persons whatsoever claiming or to claim any right or title of dower or any other right or title of, in, to, or out of the same, and in further confirmation thereof the said George Sickman doth, by these presents, grant, bargain, and sell, alien, enfeoff, release, and confirm, and by this present indenture hath granted, bargained, and sold, aliened, enfeoffed, released, and confirmed the aforesaid equal undivided half part of the plantation aforesaid, to be hereafter divided by a division line to be run from the line of said plantation on the Chestnut hill a northerly course to the line dividing the said plantation from the land of John Nicholas Werkheiser, so as to include the full half part of said one hundred and seventy-five acres, more or less, (he, the said George Sickman, reserving to himself, nevertheless, that part on which the buildings are erected,) to said Jacob Ackerman, his heirs and assigns, to have and to hold the aforesaid one equal undivided half part of the plan-

tation or tract of land aforesaid, the whole into two equal parts in quantity and quality to be divided, (except as before excepted,) to the aforesaid Jacob Ackerman, his heirs and assigns forever. In trust, nevertheless, to and for the sole and separate use of the said Sarah, the wife of the said George Sickman, as aforesaid, and the said George Sickman doth also agree that the said Sarah shall have the free liberty and privilege to take and use as much water out of the well now on that part of the plantation reserved by the said George as aforesaid as she may think necessary and expedient for her use, and for that purpose to pass and repass to and from the said well over the land of the said George, without any molestation or interruption by the said George, or by any other person or persons whatsoever. And the said George Sickman doth further agree as aforesaid, that the said Sarah shall have and keep all her wearing apparel of which she is now possessed, and also all the personal property, beds, and household furniture which she brought to him at the time of her marriage, or which has been since purchased with her money, and also that she shall have one hog of those now in the pen, part of the potatoes and cabbage now in the ground, and further, that the said Sarah shall keep the children born of the said marriage, and bring them up and maintain and educate them as she may think right and proper. And the said George Sickman doth further covenant, grant, and agree, as aforesaid, that he, the said George Sickman, his heirs, executors, and administrators shall and will, from time to time, and at all times hereafter well and sufficiently save, defend, and keep harmless as well the said Jacob Ackerman, his executors, and administrators, and Sarah, the wife of the said George, as all and every the wearing apparel, moneys, bonds, obligations, notes, goods, chattels, furniture, household stuff, beds, bedding, and other effects and personal estate of what nature or kind soever, and the lands, tenements, and hereditaments which either in virtue of the present articles are given and made over to and for the use of the said Sarah, or which she shall at any time hereafter get, acquire, obtain, or in any manner or by any right be seized or possessed of as aforesaid, or which she or any other person in her right or to her use may or can hereafter claim, challenge, or demand, and of and from all debts, dues, obligations, contracts, and engagements of what nature soever heretofore contracted by the said George Sickman, or which, at any time hereafter, he may contract, except the one half of the debts contracted

[Osterstock *et al. v.* Sigman *et al.*]

by the said George, prior to the ninth day of February, in the year of our Lord one thousand eight hundred and twenty-one, which the said Sarah is to pay, and of and from all and all manner of action or actions, suits, arrests, attachments, distresses, processes, judgments, seizures, recognizances, liens, and executions had done, suffered, sued forth, recovered or obtained, or hereafter to be had, done, suffered, sued forth, recovered, and obtained by reason of the debts, dues, contracts, and engagements or any of them of the said George Sickman contracted or to be contracted as aforesaid, or by any default of him, the said George Sickman, or by his acts, means, consent, or procurement, (except as before excepted,) and that he, the said George Sickman, will not, on the decease of the said Sarah, claim or take administration of her goods and chattels, rights, or credits, or in any manner disturb or prevent her disposition thereof, or in case of her intestacy prevent or disturb the transmission and succession thereof to her personal representatives. And the said Jacob Ackerman, for himself, his heirs, executors, and administrators, in consideration of the premises, doth covenant, promise, grant, and agree to and with the said George Sickman, his executors, administrators, and assigns, by these presents upon the delivery, by the said George, of the wearing apparel, household furniture, and personal estate aforesaid, and the possession of the equal undivided half part of the plantation or real estate aforesaid into the hands of the said Jacob, to and for the sole and separate use of the said Sarah, the wife of the said George as aforesaid, the said Sarah shall and will pay and satisfy the one half of the debts contracted by the said George prior to the ninth day of February, one thousand eight hundred and twenty-one, and that she, the said Sarah, shall not and will not, at any time hereafter, claim from the said George Sickman any alimony or any allowance in the nature of alimony ; and that the said Sarah will not any time during her natural life claim or demand from the said George any further or other provision in money or otherwise for her maintenance and support in health or in sickness, nor at the death of the said George challenge, claim, or demand any dower or thirds in or out of his estate, real or personal, of which he shall die .seized or possessed. And further, the said Jacob Ackerman covenants, promises, and agrees as aforesaid, that he will, well and truly, from time to time and at all times hereafter, indemnify and save harmless the said George Sickman, his heirs, executors, and administrators of, and

[Osterstock *et al. v.* Sigman *et al.*]

from all debts, dues, obligations, and engagements which the said Sarah shall or may hereafter contract during the separation aforesaid, and of and from all costs, charges, and expenses whatsoever for or by reason of the maintenance and support of the said Sarah during the said separation in health and sickness, and of and from all suits, actions, and demands, and all prosecutions, claims, and controversies as well by and at the instance of the said Sarah, as by all and every other person or persons whomsoever lawfully claiming or to claim for any charge or expense for the maintenance and support of the said Sarah during the said separation, or for or by reason of any quarrels, disputes, injuries, or complaints which have heretofore been done, had, or arisen between the said George Sickman and Sarah, his wife, to the day of the date of these presents, and of and from all claim and demand of dower or thirds by his said wife out of his estate, real or personal, of which he may or shall die seized or possessed for or by reason of the coverture aforesaid."

After this date, the said George and Sarah lived separate and apart from each other, and on the 26th day of May, A. D. 1824, the said Sarah, the said George being still living, married Jacob Osterstock, by whom she had three children, viz : the defendants and one other. George Sickman died about the year 1870 ; Sarah, his wife, died April 16, 1882 ; and the said Jacob Osterstock died July 12, 1872. George Sickman died in the poor-house, of which he had been an inmate some four or five years prior to his death. Sarah Sickman, *alias* Osterstock, left a will, a copy of which is made part hereof.

[In this will, the testatrix directs her executor to sell the land derived from George Sickman, and after paying debts and certain legacies, to divide the remaining proceeds equally among her children, the progency of Sickman and Osterstock.]

At the time the present writ was served upon them, the defendants were, and still are, in possession of the land in controversy, claiming the same as devisees of the said Sarah Sickman, *alias* Osterstock, who, they contend, took said land in fee, under the articles of separation aforesaid.

George Sickman conveyed the half of the farm, retained by him under the articles of separation, to John Sigman by deed dated December 4, 1824, and recorded in deed book A, vol. 5, p. 279, which deed was received in evidence. Sarah Sickman, *alias* Osterstock, also gave a

deed jointly with the said Jacob Osterstock and the said Jacob Ackerman, for some seven acres of the other half of said farm mentioned in said articles, to Sarah Osterstock, which deed was also given in evidence.

*Second.* 'Upon the foregoing facts, we reach the conclusion that Sarah Sickman took but an estate for life in the one half of the farm set aside for her use in the articles of separation. Not only are there no words of limitation over to her heirs, but the language of the articles is such as to leave no room for an implication that the creation of a fee was intended. The purpose of the conveyance to her is expressly declared to be "that the said Sarah shall at all times hereafter have a suitable provision and maintenance," in consideration of which it is declared "that the said Sarah shall from henceforth have, hold, occupy, possess, and enjoy" the premises. Then follows the conveyance to the trustees, "in trust for the sole and separate use of the said Sarah" without more. True, the conveyance of the legal title is to "Jacob Ackerman, his heirs, and assigns" in trust, etc., but this signifies nothing, for it matters not what may be the nominal duration of an estate given to a trustee, it continues in equity no longer than the thing sought to be secured by the trust demands: Koenig's Appeal, 7 P. F. S., 355. See also Perry on Trusts, § 312, cases there cited.

At the trial, the learned counsel for the defendants argued with much earnestness that an absolute power of disposition over the land in controversy was given to Sarah Sickman, and that this enlarged her estate into a fee. We think, however, that the whole of this part of the very ingenious and able argument of the learned counsel of the defendants is based upon a misreading of the articles of separation. The power to sell created by the articles does not, as we think, refer to the land in controversy at all. George Sickman, having released all his right, title, and interest in and to any lands, tenements, or hereditaments, of which his wife was then, or might thereafter be, seized or possessed, and in and to all her personal property of every kind whatsoever, "which by these articles are made over or secured to her," or which at any time thereafter she might acquire, grants to her the absolute power to dispose of "the same." This is the power referred to by the learned counsel for the defendants upon which he bases his argument. But manifestly the words "the same" as here used, refer, so far as the real estate is concerned, to such lands, tenements, and hereditaments only as Mrs. Sickman was seized or pos-

[*Osterstock et al. v.* Sigman *et al.*]

sessed of at the time the articles of separation were signed, or such as she might acquire afterwards. The land in controversy belonged to neither category. Whatever title she acquired in these she acquired by and under the articles. It will not do to say that such a construction savors too much of refinement. The distinction is palpable, and was recognized by the parties; for, in dealing with the personal property, as has been seen, the articles of separation include in express terms property "which by these articles are made over or secured to the said Sarah." That both George and Sarah Sickman seemed to regard the latter's title as absolute after their separation, is a circumstance which we do not feel at liberty to take into consideration, and without further elaboration we record our decision in favor of the plaintiffs."

Exceptions were filed by the defendants, which, on hearing, were dismissed by the Court, and judgment entered for the plaintiffs.

The defendants thereupon took this writ, assigning for error, *inter alia,* the action of the court in holding that Sarah Sickman took but an estate for life.

*F. H. Lehr* and *W. S. Kirkpatrick* for plaintiffs in error.

The deed from George Sickman gives to Sarah Sickman an estate with power to convey or to devise the land in controversy : Jarman on Wills, Vol. II, page, 273 ; Cruise on Real Property, 148, § 14 ; Drusadow *v.* Wide, 13 Sm., 170 ; Edwards *v.* Bailey, Cowp., 600.

This deed can only mean that his wife Sarah shall have the power to sell or to devise the land in controversy. It was the only land that she could be empowered to sell or devise by this instrument. She had in fact no land at the time of signing of this instrument other than the half of the farm given to her by it, and if she had had other land, he could not empower her either to sell, convey, or to devise any lands she might have possessed before the signing in this way, because it was not included in the conveyance to the trustee therein named ; the only way he could empower her to devise or sell land without hindrance from him was, as he did, by assigning the same to a trustee, and at the same time empowering her either to devise as she saw fit, and at the same time sell or convey the same as though she were a *femme sole.*

The married woman's act of 1848 had not yet then been passed. Had he conveyed the property in question to Jacob Ackerman, the trustee in fee to the use of his wife

Sarah and her heirs, the statute of uses would have executed the use, and would have passed to the wife the entire estate in fee simple. '

This would have clearly defeated the very purpose over and over again expressed in the instrument, for had the entire estate thus vested in the wife, she could not have made any conveyance of the fee or lesser estate without the joinder of her husband, nor could she have made any devise thereof.

Is this, therefore, an estate in the wife for life only ? It is certainly more. It was the intention of the grantor either to give a fee, or, what would be still better, a full enjoyment of the land with power to dispose of the same without any restraint or condition.

Had he intended to give her simply a life estate without anything more, it would have been easy to say so. In few and simple words it would have been stated to be for life, with remainder to his own use.

But it will be noticed that he omits the words for life, and gives her an estate in the land freed and discharged from any person whatever claiming any right or title of, to, or in the same.

*Edward J. Fox* and *Edward J. Fox, Jr.*, for defendants in error.

The decision of the question arising in this case by the court below is in accordance with elementary principles as well as an unbroken current of decisions : Doe *v.* Nicholls, 1 B. & C., 336 ; Doe *v.* Simpson, 5 East, 162 ; Adams *v.* Adams, 6 Ad. & E. N. S, 860 ; McBride *v.* Smyth, 4 Sm., 249 ; Koenig's App., 7 Sm., 355 ; Perry on Trusts, § 312.

At the death of Mrs. Sickman, there being no creation of a remainder by the deed and the trust estate being ended, the estate in the land reverted to the grantor, if living, or to his heirs at law if he died intestate : Story's Eg. Juris., § 1196a ; McElroy *v.* McElroy, 113 Mass., 511 ; Parks *v.* Parks, 9 Paige, 110.

It is contended that the deed actually vested an estate in fee simple in Sarah Sickman, and the argument is based upon certain clauses in the deed which are covenants between the parties and which precede that portion of the deed, which conveys the land in question to the trustee; "nor will * * claim any right, title, or interest in any lands, tenements, or hereditaments of which she now is, or shall, or may hereafter be seized or possessed."

It will be impossible to reconcile this construction with that part of the deed in which the grantor conveys to the

trustee and defines the.trust. Before the delivery of the deed she certainly had no estate in the land beyond a right of dower, and, therefore, the words "of which she is now seized or possessed" could not relate to this land.

*Eo instante* the deed was delivered, she was possessed of whatever estate or interest in the land that the deed conveyed to her. Therefore, the words in the deed "any lands, tenements, or hereditaments of which she shall or may hereafter be seized or possessed," cannot relate to this land. "Hereafter" refers to future time. If the grantor desired to refer to this land, and to covenants to make no claim hereafter to it, the words "either by this deed or otherwise" or words of like import, have been inserted after the word "possessed" in the second line from the bottom of page 2 of appendix. It is manifest that the grantor did not refer to the land conveyed by this deed, because, in the next clause of the same sentence, where he speaks of the personal property and covenants "that he will not claim or demand any title or interest therein," he speaks of it "which by these present articles are made over or secured to the said Sarah for her use, or which at any time hereafter she shall yet acquire," &c.

Where the grantor reaches that part of the deed in which he conveys this land, he recites that "in consideration also, that the said Sarah shall at all times hereafter have a suitable provision and maintenance," "he doth covenant, &c.," "that the said Sarah shall from henceforth have, hold, occupy, possess, and enjoy the one equal undivided half part," &c. The *habendum et tenendum* is to Jacob Ackerman, his heirs, and assigns "in trust, nevertheless, to and for the sole and separate use of the said Sarah, the wife of the said George Sickman, as aforesaid."

It is plain from the whole instrument that it was to provide for the maintenance and support of the wife during her life. The estate was in the trustee during Sarah's life, and at her death it reverted to the grantor and his heirs by operation of law.

MARCH 24TH, 1884.—PER CURIAM: A careful examination of the deed executed by George Sickman convinces us that it gave to his wife a life estate only in the land in question. The personal property thereby transferred to her is given absolutely, and he agrees that she may, without any hindrance from him, use and dispose of any property she then owns or may thereafter acquire, as if she was a *femme sole.* As to the land of which he gives her

the use, he not only omits words of inheritance, but carefully avoids using any language evincing an intention to vest a fee in her. The main purpose of the agreement was to furnish her during life a separate support and maintenance as his wife. No divorce was provided for. It is evident that none was intended. As we affirm this judgment on the language of the deed, it is not necessary to decide whether the fact that she afterwards was guilty of bigamy, and for many years persisted in living in adultery, would not have worked a forfeiture of all her rights in the land. It is very clear that an agreement by which husband and wife shall live separately, and he provides for her support, does not contemplate that she shall give birth to a brood of illegitimate children to deprive his lawful children of their just inheritance.

There is no error in the judgment.

Judgment affirmed.